UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBIN TWITCHELL,                )
                                )
    Plaintiff                   )
                                )
v.                              )    1:10-cv-00298-DBH
                                )
SOCIAL SECURITY ADMINISTRATION  )
COMMISSIONER,                   )
                                )
    Defendant                   )

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Robin Twitchell has severe impairments consisting of degenerative disk disease of the lumbar spine with radiculopathy, migraine headaches, reduced visual acuity, and obesity, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Twitchell's application for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Twitchell commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

**Administrative Findings**

The Commissioner's final decision is the February 17, 2010, decision of Administrative Law Judge Joseph Shortill because the Decision Review Board did not complete its review during the time allowed. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1.[1]) Judge Shortill's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (R. 7-15.)

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

At step 1 of the sequential evaluation process, the Judge found that Twitchell meets the insured status requirements of Title II through December 31, 2012, and has not engaged in substantial gainful activity since June 3, 2007, the date of alleged onset of disability. (Findings 1 & 2, R. 9.)

At step 2, the Judge found that Twitchell has the following severe physical impairments: degenerative disk disease of the lumbar spine with radiculopathy, migraine headaches, reduced visual acuity, and obesity. The Judge found that obesity contributes to Twitchell's musculoskeletal complaints. The Judge found that fibromyalgia allegations were not substantiated by a diagnosis from a rheumatologist. Similarly, the Judge rejected allegations of a right upper extremity condition based on a negative MRI. The Judge also found that an alleged mood disorder was not a severe impairment. (Finding 3, R. 9-10.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 4, R. 10.)

As for residual functional capacity, the Judge found that Twitchell's combined impairments limit her to sedentary work, require that she be able to adjust between sitting and standing at will and never have to negotiate certain difficult terrain or obstacles or perform tasks requiring greater than 20/40 visual acuity. Certain postural and environmental restrictions are also indicated. Reaching with the right upper extremity is limited to frequent reaching and work must be low stress with only occasional changes. While the claimant testified to greater restrictions, the Judge found her allegations to be unreliable based on a lack of objective medical evidence of disabling pathology. He also was skeptical of Twitchell's allegations in light of a physician's disinclination to endorse Twitchell's disability claim without additional evaluation

and treatment of her complaints. The Judge drew on various statements from treatment records and the fact that a sustained treatment program was not apparent and concluded that Twitchell's various representations reflect exaggerated complaints. Although the consulting expert who assessed Twitchell's physical residual functional capacity found a capacity for light work, the Judge gave Twitchell the benefit of the doubt and found only a sedentary work capacity. The Judge rejected opinion evidence supplied by a treating physician and nurse based on a lack of objective support and over-reliance on claimant's representations. (Finding 5, R. 10-13.)

At step 4, the Judge found that this degree of limitation precluded past relevant work as a cashier, clerk, and pharmacy technician because those jobs required more than sedentary exertion. (Finding 6, R. 13-14.) A vocational expert testified at hearing concerning the existence of additional past relevant work, but the Judge did not offer findings concerning those other jobs. Implicitly, the Judge found that Twitchell had carried her burden of demonstrating that her residual functional capacity precludes all of her past relevant work.

Twitchell was born in 1967, has a high school education, and is able to communicate in English. (Finding 7-8, R. 14.) The Judge presented these vocational factors and his residual functional capacity finding to a vocational expert at the administrative hearing and, based on the vocational expert's testimony, found at step 5 that Twitchell could engage in substantial gainful employment, including in the representative occupations of addresser, call out operator, and charge account clerk, resulting in a finding of "not disabled." (Findings 10-11, R. 14-15.)

## Discussion of Plaintiff's Statement of Errors

Twitchell asserts five grounds for reversal, restated here in the order of the sequential evaluation process: (1) failure to regard right shoulder, elbow, and wrist pain, or generalized allegations of chronic diffuse pain, as severe impairments; (2) failure to consider the side effects

of medication; (3) failure to accord substantial weight to the opinions of primary care providers; (4) failure to find that impairments precluding past relevant work as a telephone answering operator (sedentary) would similarly preclude the representative sedentary jobs identified by the vocational expert; and (5) failure to find that vision and right upper extremity limitations preclude the representative jobs identified by the vocational expert. (Statement of Errors, Doc. No. 12.)

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## A. Record Evidence

Twitchell is in her early 40s. She is a high school graduate and has completed one year of secretarial training. She is married and has two grown children. Twitchell alleges that she became disabled for work purposes in June of 2007, when she stopped working in homecare at a group home in Milford, allegedly because her right shoulder was not up to the task. Twitchell alleges that her greatest impairment involves her right upper extremity and attributes her pain in these areas to injuries sustained in the 1990s and from a more recent fall in 2006. (Ex. 4F, R. 271; Hr'g Test., R. 26-28.) Twitchell also experiences lower back pain and left lower extremity radiculopathy, which appears to have a connection with an injury from a different fall in

4

November 2005 and a disc bulge at L5-S1. This pain was managed temporarily in the summer of 2006 with an epidural injection. (Northeast Pain Management, Ex. 5F.) Prior to this, Twitchell generally avoided taking daytime pain medication. (Bangor Internal Med., Ex. 6F, R. 300.) One doctor who evaluated Twitchell neurologically opined that significant benefit would likely result from regular aerobic exercise. (Neurology Assocs. of E. Me., Ex. 8F, R. 305.) The latest MRI of record reports "minimum L5-S1 disk degeneration normal for age. No herniation or neural impingement." (Paul W. Templeton, M.D., Aug. 2009, Ex. 24F, R. 530.)

An August 2006 report concerning complaints of wrist pain assessed as over-use. (Id., R. 290.) Sometime in the first half of 2007, Twitchell's primary care provider, Penobscot Community Health Center, assessed a fibromyalgia condition, but this diagnosis is offered by a nurse practitioner. (Ex. 21F, R. 478-484.) In December of 2009, shortly before a disability hearing, this same provider offered a new assessment of somatoform pain disorder. (Ex. 28F, R. 555.) This assessment hearkens back to a much earlier record of 2003, generated by Geoffrey Gratwick, M.D. (a rheumatologist), who, upon "limited" examination and the observation of an absence of any rheumatologic disorder, opined that there would not be "one particular explanation for her ongoing discomfort" and suggested use of the label "chronic pain syndrome" and referral to Dr. Borkhum for pain management approaches. (Ex. 30F, R. 587.)

Twitchell also has a history of migraine headaches and reduced visual acuity. The evidence associated with migraines includes a neurological evaluation by Stephanie Lash, M.D., who described "intermittent problems with migraine, but this is not frequent, and between headaches she feels quite well." (Neurology Assocs. of E. Me., Ex. 8F, R. 303.) On referral for pain management counseling, it was observed in a letter that Twitchell, in 20 years, had never had a migraine develop at work and that the condition appeared to be associated with stressors in

the home. (Jonathan Borkhum, Ph.D., Ex. 19F, R. 383.) Even with corrected lenses, Twitchell's vision cannot reach 20/20. However, the degree of limitation is not significant (between 20/30 and 20/40). There are some signs of macular degeneration (macular drusen), but the objective findings are not persuasive of significant problems with vision. (Ex. 11F, R. 322, 327-29.)

In August of 2007, David Axelman, M.D., examined Twitchell for Maine Disability Determination Services. His report indicates that, among other things, he evaluated the right upper extremity issues and also suggestions in the record of possible fibromyalgia symptoms. (Ex. 11F.) He found the objective evidence of fibromyalgia inconclusive and anticipated that prior injuries were as likely the cause of right upper extremity pain. (R. 339.) Thereafter, also in August of 2007, Iver Nielson, M.D., did a physical residual functional capacity assessment for Maine DDS. (Ex. 12F.) He found the record to be devoid of objective evidence substantiating Twitchell's claims of functional limitation, regarding Dr. Axelman's consultative examination as supplying the record with the "most objective and reliable" evidence to date. (R. 347.) He assessed a light work capacity. (R. 342.) Maine DDS sought additional consultative evaluations in April of 2008. One consulting expert reviewed the records associated with the visual impairment and found it non-severe. (H. Randall, M.D., Ex. 16F.) Another reviewed the musculoskeletal system and concluded that Twitchell's subjective allegations were not fully supported by the evidence and he assessed a capacity for light work. (C. Jones, M.D., Exs. 17F & 18F.)

Twitchell's own care provider has opined that she is disabled from all work activity by chronic pain, which would preclude sitting, standing, or walking for two hours total or any lifting except for objects weighing less than ten pounds. (Ann Barrows, F.N.P., Dec. 2008, Ex. 20F, R. 388.) This assessment was reiterated in January of 2010 with an assertion that Twitchell's

6

condition had not changed in the interim. (Ann Barrows, F.N.P. & John Patten, D.O., Ex. 31F, R. 592.)

B. Discussion

Twitchell's allegations are discussed in order of the sequential evaluation process, beginning with her step 2 challenge. For reasons that follow, none of her challenges identifies a remand-worthy error.

*1.    Right upper extremity / fibromyalgia / chronic pain syndrome*

Twitchell complains that her chronic pain in her right upper extremity must be treated as severe impairments under one or more diagnostic categories. (Statement of Errors at 10-13.) At step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. § 416.909. As for the severity requirement, the claimant's burden at step 2 is a *de minimis* burden, designed simply to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a determination at step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At step 2, only medical evidence may be used to support

7

a finding that an impairment is severe.  20 C.F.R. § 416.928.

The Judge found that the record does not contain any objective evidence of a severe impairment of the right upper extremity.  He also found that the record lacked any diagnosis of fibromyalgia.  (R. 10.)  This is a close question.  Obviously, Twitchell's right upper extremity has been a primary concern for her and has received a substantial amount of physician attention.  On balance, the record demonstrates more than a mild limitation in the right upper extremity and it is difficult to articulate what "substantial evidence" there is to deny the existence of this condition.  By all appearances, both Dr. Axelman and Dr. Nielson were willing to accept the existence of relevant diagnoses concerning the right upper extremity.  Likely the Judge was unimpressed with the evidence of any localized rheumatologic condition and this is understandable in light of Dr. Gratwick's assessment upon referral.  I presume that there is "error" at step 2 in failing to include a right upper extremity limitation involving chronic pain, though I do not believe that the record requires use of the fibromyalgia label based on the comments of both Dr. Gratwick (R. 587) and Dr. Axelman (R. 339) and the negative evaluation of this diagnosis by Dr. Nielson (R. 348).

Because the RFC assessment requires consideration of both severe impairments and those impairments found not severe at earlier stages of the sequential evaluation process, and because it is the claimant's burden to demonstrate the degree of limitation resulting from her impairments, an error in describing a given impairment as non-severe at step 2 is generally deemed harmless, unless the claimant can demonstrate that the error proved outcome determinative at a later stage of the process.  Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3, aff'd, 2010 U.S. Dist. Lexis 4005 (D. Me. Jan. 19, 2010) (citing cases).  The Nielson physical residual functional capacity assessment

indicates that Twitchell should not work in an occupation requiring constant overhead reaching or weights in excess of 10 pound, but for occasional encounters with weights of up to 20 pounds. (R. 342, 344.) The treatment provider, on the other hand, says only occasional weights of less than 10 pounds, with no reaching overhead at all. (R. 388-89.) The divergence of opinion on this aspect of functioning is like the divergence associated with the limitations arising from degenerative disk disease. The DDS expert consultants, rehearsed in disability standards, have found work capacity, whereas the treatment provider has assessed no capacity. Neither viewpoint can be proved decisively by the objective medical evidence.

In this scenario, the Judge was left to scour the record to determine what perspective on the record offered the more reasonable assessment. The Judge considered Twitchell's subjective complaints, found cause to doubt those complaints based on certain entries in the longitudinal record (e.g., limited interest in physical therapy despite strong recommendations for the same, moving furniture, chasing after a cat outdoors, minimal use of medication for pain), drew some inferences unfavorable to Twitchell based on the same, and emphasized the absence of significant clinical findings and mild MRI data. Despite this, he also gave Twitchell some benefit of the doubt, resolving on a sedentary work capacity rather than a light-work capacity, meaning his finding would require that the vocational expert identify jobs with a 10-pound maximum weight restriction. 20 C.F.R. §§ 404.1567(a), 416.9679(a). As has often been said, "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]," Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965), and this case record divulges no remand-worthy error in relation to the Judge's assessment of physical residual functional capacity. Consequently, the step 2 error associated with the right upper extremity does not call for remand.

9

2.  *Side effects of medication*

Twitchell argues that the Judge failed to adequately consider the non-exertional implications of drowsiness, which is allegedly associated with her prescribed medication (Darvocet). (Statement of Errors at 9-10.) The Judge did not ignore the existence of the Darvocet medication. He noted that Twitchell reports taking it at night for pain and to allow her to sleep. (R. 11.) For her own part, Twitchell cited her hearing testimony at pages 21 and 47 of the Record, arguing that she experiences sleepiness when she takes Darvocet. (Statement of Errors at 10.) Because the evidence demonstrates that Twitchell takes Darvocet in the evenings to aid with sleeping, I fail to see the harm in the Judge's failure to assess a vocational restriction based on this evidence. NP Barrows's responses to the physical RFC questionnaire do not include any mention of this alleged limitation. (Ex. 20F, R. 386 ¶ 7; Ex. 31F, R. 588 ¶ 7.)

3.  *Treating source opinion*

The Commissioner's regulations promise that controlling weight will be given to the opinion of a treatment provider, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In this case the Judge correctly found that the longitudinal treatment record simply fails to provide appreciable clinical and diagnostic support for the treatment provider opinion. This is particularly so in relation to the symptoms of chronic pain. The Court must keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez, 349 F.2d at 496 ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

10

substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). The Court cannot overturn that finding just because it might draw different inferences from the record. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

*4.    Inconsistent vocational expert testimony*

Twitchell's lead statement of error is that the Judge erred because his "finding that [Twitchell] cannot perform her past relevant work precludes her from being able to perform the jobs the ALJ identifies at step 5." (Statement of Errors at 3 ¶ 4.) The genesis of this argument is that the vocational expert testified at the hearing that Twitchell cannot perform any of her past relevant work (R. 57-58), which included a sedentary job as a telephone answering operator (R. 53). She contends that, if she cannot do the operator work, then she cannot do the other work identified by the vocational expert. Twitchell says the vocational expert's testimony was sloppy and that the vocational expert failed to recognize obvious similarities in the functional demands of the sedentary work under consideration. (Statement of Errors at 5.)

At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of occupations exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work and ordinarily does so "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

11

A review of the hearing transcript reflects that the vocational expert ruled out the operator job based not on exertional considerations or reading or reaching considerations, but based on the fact that the job is specific vocational preparation level 3. The Judge's residual functional capacity finding restricts Twitchell to low-stress work having only occasional changes and the hypothetical he proposed at the hearing posited a limitation to unskilled work. (R. 55-57.) Because the operator position was precluded on the basis of SVP level, the vocational expert's testimony is not internally inconsistent in precluding the sedentary operator job but not the other sedentary work offered for purposes of the step 5 inquiry.

5.   *Demands of other work*

Finally, Twitchell argues that the Judge erred in his failure to find that her vision and wrist limitations preclude the representative occupations of addresser, call out operator, and charge account clerk. According to her, she could not perform any of these occupations because her blurred vision precludes her from performing sustained reading activity and her right upper extremity limitation precludes her from sustained writing or other right-hand work. (Statement of Errors at 6-9.)

This argument hearkens back to the residual functional capacity analysis and therefore presents a challenge on an issue for which Twitchell bears the burden of proof. See Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) ("[T]he only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC."); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2) (same). The Judge found that a restriction to frequent right-arm overhead reaching was sufficient when coupled with a sedentary exertion level (no more than 10 pounds) and

12

relayed this information to the vocational expert. For reasons indicated above, there is substantial evidence of record to support the Judge's residual functional capacity finding, including consulting expert opinion of a capacity for light-exertion work (up to 20 pounds on occasion). As for visual acuity, the Judge notified the vocational expert of Twitchell's 20/40 vision, with correction, though he did not specify that she also suffered from blurred vision. The Judge found, however, that the record indicated, at most, "slight" blurring with continued reading. (R. 12.) He also noted entries in the medical records from February 2009 indicating an improved condition, an ability to read fine, and an indication that Twitchell is, in fact, a "constant reader." (R. 12; Ex. 21F, R. 392.) In light of this substantial evidence, it was not error for the Judge to propound a hypothetical involving 20/40 vision without including any indication of blurred vision. In turn, the vocational expert's testimony supplies substantial evidence that Twitchell's restricted visual acuity would not preclude her from performing the occupations in question.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
                                    U.S. Magistrate Judge
July 8, 2011